UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW GARY LEANDER, III; and<br>KEVIN RALPH NIXON,<br><br>Defendants. | Case No. 4:19-cr-00273-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Defendant Matthew Leander's Motion to Suppress (Dkt. 37), and Defendant Kevin Ralph Nixon's Motion to Join (Dkt. 46). On November 23, 2020, the Court held oral argument and took the Motions under advisement. Upon review, and for the reasons set forth below, the Court DENIES the Motions.

## II. BACKGROUND

During the early evening of June 19, 2019, Idaho State Police Trooper Shively ("Trooper Shively") attempted to conduct a traffic stop of a 1998 maroon Toyota Sienna van with two male occupants for a perceived violation of Idaho Code § 49-906. That section sets out certain requirements for taillights on vehicles. Trooper Shively noted that the van was traveling with its lights illuminated. However, he also noted that "the rear passenger taillight seemed to be out or not visible." Trooper Shively eventually got behind the van in

his patrol car. His dash-mounted camera showed that the driver-side taillight operated normally, but the passenger-side taillight illuminated sporadically—during the pursuit, it was illuminated at times; at other times it was not illuminated. *Compare* Dkt. 50, at 2–4; *with* Dkt. 47, at 2.

After observing this, Trooper Shively activated his emergency overhead lights to initiate a traffic stop. Immediately after he did, Leander failed to stop at a stop sign and a chase ensued.  During the chase, Leander failed to stop at a second stop sign. Trooper Shively then executed a pursuit intervention technique, thereby causing the van to collide with a fence, become disabled, and stop. At that point, Trooper Shively exited his patrol car and ordered the van occupants not to move. Despite Trooper Shively's order to stop, the driver of the van, who was later apprehended and identified as Leander, bolted away from the van. Other officers found $1,379 and approximately three grams of methamphetamine on Leander's person at the time of his arrest.

In the meantime, Trooper Shively detained Kevin Ralph Nixon, who was the passenger of the van. Trooper Shively found a black pouch with a plastic bag of what appeared to be controlled substances and drug paraphernalia on Nixon. Nixon admitted to ingesting methamphetamine with Leander prior to the pursuit. Officers thereafter searched the van both initially and later through an inventory search. They found approximately four ounces of methamphetamine, an estimated five to ten grams of marijuana, various pills, cellphones, ledgers, and drug paraphernalia.

On August 27, 2019, Leander and Nixon were indicted each on a single count of possession with intent to distribute methamphetamine and single asset forfeiture allegation.

Dkt. 1. On May 1, 2020, Leander filed the pending Motion to Suppress. Dkt. 37. The Court ordered Leander to file a brief in support of his Motion. Dkt. 38. On June 5, 2020, he filed a Memorandum in Support of his Motion to Suppress Evidence, contesting the basis for the initial traffic stop and requesting that the evidence recovered after the stop be excluded. Dkt. 43. On June 24, 2020, Nixon filed a Motion to Join Leander's Motion to Suppress Evidence under *Brendlin v. California*, 551 U.S. 249, 259 (2007) ("[A] passenger may bring a Fourth Amendment challenge to the legality of a traffic stop."). Dkt. 46. Subsequently, the Government responded to the Motions (Dkt. 47), and Leander replied (Dkt. 50). On November 23, 2020, the Court held a hearing on the matter, which is now ripe for a decision.

### III.   LEGAL STANDARD

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. The stop of a vehicle is a seizure of its occupants and is therefore subject to the Fourth Amendment standards. *E.g.*, *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Brendlin*, 551 U.S.at 255; *Whren v. United* States, 517 U.S. 806, 809–10 (1996); *Berkemer v. McCarty,* 468 U.S. 420, 436–437 (1984) ( "We have long acknowledged that stopping an automobile and detaining its occupants constitute a seizure." (cleaned up)). Indeed, "[a]n individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Delaware v. Prouse*, 440 U.S. 648, 662–63 (1979).

Whether such a seizure is reasonable under the Fourth Amendment, however, depends on the totality of the circumstances. *Navarette v. California*, 572 U.S. 393, 397 (2014). To be reasonable, the Fourth Amendment requires at a minimum that law enforcement have reasonable suspicion that a person is violating a traffic law to support the stop of a vehicle. *Id.* at 396; *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Reasonable suspicion is more than "a mere hunch" but "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette*, 572 U.S. at 397 (cleaned up). In other words, law enforcement officers have reasonable suspicion when they have "a particularized and objective basis for suspecting the particular person" is breaking the law. *Id.* at 396 (cleaned up).

On the other hand, probable cause that a traffic violation or crime has been or is being committed makes a stop per se reasonable. *Whren v. United States*, 517 U.S. 806, 810, 813–15 (1996). "Probable cause exists 'when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" *United States v. Wallace*, 213 F.3d 1216, 1219. (9th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

While "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect," *United States v. Calandra*, 414 U.S. 338, 348 (1974). Under the exclusionary rule, "illegally seized evidence" cannot be used "against the search victim in a criminal trial." *Id.* at 350.

When a defendant challenges a warrantless search or seizure, the government bears the burden of establishing by a preponderance of evidence that the search or seizure did not violate the Fourth Amendment. *See United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991); *see also United States v. Jeffers*, 342 U.S. 48, 51 (1951).

## IV.   ANALYSIS

Leander and Nixon seek exclusion of all the evidence obtained after Trooper Shively initiated the stop, contending that he violated their Fourth Amendment right against unreasonable seizures. In particular, Leander argues that Trooper Shively did not have reasonable suspicion to initiate the traffic stop. Nixon joins Leander's Motion under *Brendlin*, which definitively held that a passenger of a stopped vehicle has standing to contest a seizure under the Fourth Amendment as well. 466 U.S. at 259. Nixon does not make any separate arguments and echoes Leander's arguments by incorporation.

For its part, the Government first contends that there was reasonable suspicion for the stop. The Government then argues that a seizure did not occur until the car Leander and Nixon were in was physically stopped, as opposed to when Trooper Shively activated his emergency lights in an attempt to stop them. The Government asserts that this is significant because the men's rights under the Fourth Amendment did not arise until they were in fact seized and at that point there was abundant evidence to arrest them. The Government is correct on these points.

## A.  Reasonable Suspicion

The Supreme Court has long held that "many violations of minimum vehicle-safety

requirements are observable, and something can be done about them by the observing officer, directly and immediately." *Prouse*, 440 U.S. at 660. The Supreme Court went on to explain, however, that the acting officer must have "at least articulable and reasonable suspicion" that the violation has occurred. *Id.* at 663. In *Johnson*, the Supreme Court explained that "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." 555 U.S. at 327. The Ninth Circuit has also stated, "[I]t is now clear that a police officer may stop and search any vehicle so long as the officer is able to articulate any kind of traffic or equipment violation." *United States v. Choudhry*, 461 F.3d 1097, 1098 (9th Cir. 2006) (holding that a civil parking violation "falls within the scope of the Supreme Court's decision in *Wren*").

Here, Trooper Shively based his initiation of the traffic stop on the articulable and specific fact that the taillight was not functioning properly, which he personally observed. The Government's still image from the dash-cam footage corroborates that the taillight was not functioning. Dkt. 47, at 2. And Trooper Shively articulated this by stating that "the rear passenger taillight seemed to be out or not visible."

Under Idaho Code § 49-906(1), the van was required to have two taillights illuminated as otherwise required. Subsection (3) states, "Any tail lamp shall be wired so to be lighted whenever the head lamps or auxiliary driving lamps are lighted." Idaho Code § 49-906(3). Because Trooper Shively observed the van's other lights functioning and the unlit taillight, corroborated by the dash-cam image, there were sufficient objective facts for

him to form a reasonable suspicion to initiate a traffic stop. *Cf. United States v. Pulliam*, 405 F.3d 782, 788–89 (9th Cir. 2005) ("The malfunctioning taillight provided lawful grounds for the stop, regardless of the officers' motivations."); *United States v. Wekall*, 87 F. App'x 79, 80 (9th Cir. 2004) (holding that a "one to two inch rectangular crack in the car's taillight cover" was a sufficient basis for a traffic stop); *United States v. McCartney*, 550 F. Supp. 2d 1215, 1220 (E.D. Cal. 2008) (holding that "because the vehicle's left rear taillight was not properly functioning," the officer lawfully stopped the vehicle).

In response, Leander argues that reasonable suspicion could not have existed because at various times during the pursuit, his passenger taillight was illuminated. Leander painstakingly points out both the number of times and the exact points in the video at which the taillight is functioning correctly. Dkt. 50, at 2–4. However, this argument is unavailing. To start, the moments referred to in the video occur after Trooper Shively formed reasonable suspicion of the taillight's malfunction, which means that it had no bearing on his decision to initiate the investigation and stop. Next, this argument neglects to mention that the video also confirms the taillight was not illuminated at other times. To be fair, Leander's description implicitly admits this by emphasizing the number of times the taillight functioned. But at best the taillight's on-again-off-again functioning provided an objective reason for Trooper Shively to investigate the matter. "The ultimate touchstone of the Fourth Amendment is reasonableness." *Heien*, 574 U.S. at 60 (cleaned up). Under these facts, Trooper Shively's decision to initiate a stop was reasonable.

Next, Leander points to language in Idaho Code §§ 49-906(1) and 49-903. He argues that suppression is appropriate because section 49-906's "tail lamp requirements only

become applicable when the lights are lighted as required" and section 49-903 "provides that lighted lamps are required between sunset and sunrise." Dkt. 50, at 6. He then discusses the time of sunset and the initiation of the stop.

Regardless of those times, Leander's argument misstates the law and overlooks pertinent portions of the Idaho Code. First, section 49-906(1) says that vehicles of the van's year "shall be equipped with at least two (2) tail lamps mounted on the rear, which when lighted as required, shall comply with the provisions of this section." Contrary to what Leander implies, that language is not limited to the requirements of section 49-903. For instance, section 49-906(3) requires tail lamps to be illuminated whenever the head lamps are on, as previously discussed. Here, Trooper Shively noted that the van was traveling with its headlights illuminated. Thus, under that statute, the time of the sunset is not the question; rather, the taillight was required to be illuminated because the headlights were.

Moreover, section 49-903 itself is not limited to the time between sunset and sunrise. It states, "Every vehicle upon a highway at any time from sunset to sunrise *and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred (500) feet ahead* shall display lighted lamps and illuminating devices . . . ." Idaho Code § 49-903 (emphasis added). Here, the night's sky had darkened to a point that concluding this emphasized portion of the statute was implicated would have been reasonable on Trooper Shively's part. *See Heien*, 574 U.S. at 61 ("Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground."). Therefore, these two statutory requirements provided two independent

bases for Trooper Shively to investigate the situation further.

In short, Trooper Shively had reasonable suspicion that the taillight was in violation of Idaho law, and therefore the stop was not unreasonable and did not violate the Fourth Amendment.

## B.  Timing of Seizure

Regardless of whether Trooper Shively had reasonable suspicion at the time he activated his emergency lights, Leander faces an even more insurmountable legal challenge: he was not in fact seized at that moment. Generally speaking, a person is seized within the meaning of the Fourth Amendment if, in view of all the circumstances, a reasonable person would have believed he or she was not free to leave. *INS v. Delgado*, 466 U.S. 210, 215 (1984); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, if an individual does not submit to a show of authority he or she has not been seized for purposes of the Fourth Amendment. *Brendlin*, 551 U.S. at 254 ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."). The United States Supreme Court considered whether a seizure occurs even though the subject does not yield to a show of authority in *California v. Hodari D.* 499 U.S. 621 (1991). There, the Court specifically held that "since Hodari did not comply with" an injunction to stop, "he was not seized until he was tackled." *Id.* at 629. In the context of roadside stops, the *Johnson* Court clarified that "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." 555 U.S. at 333.

MEMORANDUM DECISION AND ORDER - 9

This jurisprudence makes clear that Leander was not seized until, at the soonest,[1] Trooper Shively executed the pursuit intervention technique. Leander's Fourth Amendment rights therefore did not arise until that moment. At that point, Trooper Shively had a robust basis for probable cause, including the malfunctioning taillight, failure to stop at two stop signs, and failing to yield to a police officer in violation of Idaho Code §§ 49-606 (tail lamp), 49-807(2) (stop sign), and 49-625 (failing to yield). Leander did not submit to Trooper Shively's show of authority but chose to disregard the siren and emergency lights. Thus, even if Trooper Shively did not have reasonable suspicion at the point in which he activated his overhead lights, probable cause existed at the time Trooper Shively caused the car to come to a crashing halt. Such actions were reasonable under the Fourth Amendment due to Leander's actions. *See, e.g.*, *Whren*, 517 U.S. at 810. Accordingly, Leander's Motion is denied as exclusion of the evidence is unwarranted under the Fourth Amendment.

## C. Nixon's Joined Motion

Although Nixon indeed has standing to dispute the lawfulness of the traffic stop, *Johnson*, 555 U.S. at 332 ("A passenger therefore has standing to challenge a stop's constitutionality."); *Brendlin*, 551 U.S. at 259, his claim that the traffic stop was unreasonable and violative of the Fourth Amendment fails for the same reasons that

---

[1] An argument could be made that Leander was not seized until he was apprehended by the other officers. However, the Government has not made that argument, and the Court's decision on the lawfulness of the stop would be the same in any event. Therefore, the Court sets this argument aside merely as food for thought.

Leander's claim fails. Accordingly, his Motion is denied as well.[2]

## VI. ORDER

The Court HEREBY ORDERS:

1.    Lender's Motion to Suppress (Dkt. 37) is **DENIED**.

2.    Nixon's Motion to Suppress as a joined motion to Leander's Motion (Dkt. 46) is also **DENIED**.

DATED: January 12, 2021

David C. Nye
Chief U.S. District Court Judge

---

[2] The Government also makes arguments related to the *Terry* search of Nixon, the initial search of the van pursuant to probable cause, and a later inventory search of the van. Dkt. 47, at 6–10. Leander's arguments to the contrary all stem from his same arguments above—the stop was unlawful. Dkt. 50, at 7 (focusing on the "illegal traffic stop" and arguing that "the inventory impermissibly stemmed from Trooper Shively's initial act of commencing an illegal traffic stop"). Therefore, his arguments do not change the Court's conclusion to deny his Motion for the same reasons stated above—the stop was lawful. Moreover, the Government's arguments are also persuasive on these points because it notes the probable cause that existed and routine policy of inventory under *South Dakota v. Opperman*, 428 U.S. 364 (1976) and Idaho law.